# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FUZE, INC., <br><br> Plaintiff, <br><br> v. <br><br> EDWARD ODOM, <br><br> Defendant. | Civil Action No. 19-11737 |

## INTRODUCTION

Plaintiff Fuze, Inc. ("Plaintiff" or "Fuze") brings the present action after discovering that its former Senior Sales Engineer, Defendant Edward Odom ("Defendant" or "Odom"), had blatantly breached his contractual obligations to Fuze. Odom did so by resigning from Fuze and, without notice to Fuze, immediately taking a similar (if not identical) position at Fuze's direct competitor, RingCentral, Inc. ("RingCentral"). Odom's conduct is a clear and egregious breach of his contractual obligations to Fuze, which include obligations not to compete, not to solicit clients or potential clients and not to disclose Proprietary Information (a term defined in the NDA). Fuze continues to investigate Mr. Odom's conduct and reserves its right to seek immediate injunctive relief.

## THE PARTIES

1. Plaintiff Fuze was incorporated in Delaware and has its principal place of business in Boston, Massachusetts.

2. Defendant Odom is an individual who, on information and belief, resides at 550 East 92nd Street in Brooklyn, New York.

1

## JURISDICTION AND VENUE

3. This is an action in law and equity pursuant to which Fuze seeks relief, including preliminary and permanent injunctive relief, based on Odom's breach of contract.

4. This Court also has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a) because the parties are diverse. Fuze is a corporation incorporated in Delaware, with its headquarters and principal place of business located Boston, Massachusetts. Odom is a New York resident, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. This Court has personal jurisdiction over Odom, and venue is proper in this District, because this lawsuit arises from Odom's breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement ("NDA") that he signed as a condition of his employment with Fuze and Odom agreed in the NDA "to the personal jurisdiction and venue of the state and federal courts located in the Commonwealth of Massachusetts for any lawsuit filed there against [Odom] by [Fuze] arising from or related to" the NDA. See Exhibit A, NDA at § 13.1.

## FACTUAL SUMMARY

A. <u>Fuze's Business</u>

6. Fuze is a communications company that provides voice, video, messaging, contact center and other solutions to its business customers. The products and services offered by Fuze provide companies and business users with the ability to unify their communications into a seamless user experience across any device.

7. Fuze's services and products are sold throughout the United States and globally.

8. Fuze's success depends on its ability to identify clients for its products and

services, effectively sell its products and services to potential clients and ensure that its clients are satisfied with the products and services purchased from Fuze.

9. Fuze operates in a highly competitive sales market. Fuze devotes substantial resources to developing best-in-industry products and services, identifying potential customers for its services, customizing its products and services to the needs of each customer, working with new and current customers to implement and maintain Fuze's products and services.

10. Within Fuze's industry, this product, client and prospective client information is regarded as confidential, proprietary and trade secrets. Fuze considers and treats this information as trade secrets, including by requiring employees with access to this information to sign NDAs. This information has significant economic value to Fuze and would be of significant economic value to competitors in the industry.

B. Odom's Employment With Fuze

11. Odom was offered employment with Fuze as a Senior Sales Engineer by offer letter dated January 9, 2018. Odom's initial base salary was $140,000, with a potential bonus of $60,000.

12. This offer letter expressly conditioned Odom's employment on his execution of the NDA, a copy of which was provided with the offer letter.

13. In the NDA, in highlighted language, Odom acknowledge that he had been given the opportunity to have the NDA reviewed by counsel and that he had read and understood the terms of the NDA:

> **Advice of Counsel.** I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION OF THIS AGREEMENT.

See Exhibit A, § 13.7.

14. Odom signed the offer letter and the NDA on January 9, 2018, both of which were countersigned by Fuze.

15. Odom and began work at Fuze on January 15, 2018.

16. The NDA includes a non-disclosure provision concerning Fuze's Proprietary Information (as defined in the NDA), as well as the following no solicitation and non-compete provisions:

> **5. NO SOLICITATION OF EMPLOYEES, CONSULTANTS, CONTRACTORS, OR CUSTOMERS OR POTENTIAL CUSTOMERS.** I agree that during the period of my employment and for the one (1) year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, except on behalf of the Company:
>
> **5.1** solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of the Company to terminate his or her relationship with the Company;
>
> **5.2** hire, employ, or engage in business with or attempt to hire, employ, or engage in business with any person employed by the Company or who has left the employment of the Company within the preceding three (3) months of any such prohibited activity or discuss any potential employment or business association with such person, even if I did not initiate the discussion or seek out the contact;
>
> **5.3** solicit, induce or attempt to induce any Customer or Potential Customer, or any consultant or independent contractor with whom I had direct or indirect contact during my employment with the Company or whose identity I learned as a result of my employment with the Company, to terminate, diminish, or materially alter in a manner harmful to the Company its relationship with the Company; or
>
> **5.4** solicit, perform, provide or attempt to perform or provide any Conflicting Services (as defined in Section 6 below) for a Customer or Potential Customer.
>
> The parties agree that for purposes of this Agreement, a "***Customer or Potential Customer***" is any person or entity who or which, at any time during the one (1) year prior to the date my employment with the Company ends, (i) contracted for, was billed for, or received from the Company any product, service or process with which I worked directly or indirectly during my employment by the Company or about which I acquired Proprietary Information; or (ii) was in contact with me or in contact with any other employee, owner, or agent of the Company, of which contact

> I was or should have been aware, concerning any product, service or process with which I worked directly or indirectly during my employment with the Company or about which I acquired Proprietary Information; or (iii) was solicited by the Company in an effort in which I was involved or of which I was or should have been aware.
>
> **6.     NON-COMPETE PROVISION.** I agree that for the one (1) year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, directly or indirectly, as an officer, director, employee, consultant, owner, manager, member, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services anywhere in the world where the Company conducts business, including but not limited to locations where the Company performs research or development activities related to the Company's products, services or processes, nor will I assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the world where the Company conducts business, including but not limited to locations where the Company performs research or development activities related to the Company's products, services or processes.
>
> The parties agree that for purposes of this Agreement, "*Conflicting Services*" means any product, service, or process or the research and development thereof, of any person or organization other than the Company that is substantially similar to or competitive with a product, service, or process, including the research and development thereof, of the Company with which I worked directly or indirectly during my employment by the Company or about which I acquired Proprietary Information during my employment by the Company.

See Exhibit A, at cited sections.

17.     Odom agreed in the NDA that the above-restrictions were reasonable and would not prevent him from "earning a living or pursing [his] career" and that he had "the ability to secure other non-competitive employment using [his] marketable skills."

18.     During Odom's employment with Fuze, his job was to engage customers during the sales process and work with his sales colleagues to provide the technical knowledge and skill necessary to sell Fuze's products and services.

19.     Odom's job included explaining the product to customers, describing how the product could be customized, addressing unique customer needs and working to ensure that the product and service promised to the customer met that customer's expectations.

20. While employed by Fuze, Odom was given access to extensive, detailed and technical Proprietary Information concerning Fuze's products and services, including the architecture of Fuze's products, Fuze's product roadmap and the strengths and weaknesses of Fuze's products and services.

21. Odom was also given extensive Proprietary Information concerning Fuze's customers and potential customers, including information on the identity and needs of specific customers, the sales 'pipeline,' and the status of customers and potential customers, including whether a customer was satisfied or potentially 'poachable' by a competitor.

22. During his employment Odom was given access to almost all Fuze's most valuable Proprietary Information. He would not have been given access to this Proprietary Information absent his agreement to the terms of the NDA, including its non-compete provision.

23. The value of this client and prospective client information, or even a portion of it, far exceeds $75,000.00.

24. Odom resigned from Fuze by email on Saturday July 20, 2019, effective August 2, 2019.

25. Even though his resignation anticipated that he would continue to work through August 2, 2019, Odom deleted all his work email on July 22, 2019. This included email in his inbox and all sent email.

26. Given the sensitive nature of his position and the amount of information that he was able to access as an employee, Odom's access to Fuze's system was shut off on July 22, 2019, when Fuze learned of his resignation. Odom was paid by Fuze through the date set forth in his resignation, August 2, 2019.

27. Fuze learned late last week that, in clear violation of his contractual non-competition obligations, Odom had started employment as a Solutions Engineer at RingCentral.

28. RingCentral is a direct competitor to Fuze. Fuze and RingCentral compete to provide the same or substantially similar products and services to an identical potential customer base.

29. On information and belief, Odom's role at RingCentral is identical to the role that he had at Fuze. The knowledge that Odom had of Fuze's business, products, customers and potential customers would be invaluable to RingCentral and would be easily used by Odom to differentiate RingCentral's offerings and identify potential customers and product and service offerings for RingCentral.

30. The NDA requires that Odom inform Fuze of "all employment and business ventures" that he enters during the non-compete period. See Exhibit A, at § 12.2. Despite this, Odom did not inform Fuze that he had started work at RingCentral.

31. Immediately after it learned of Odom's employment with RingCentral, Fuze directed its counsel to send both Odom and RingCentral a letter demanding that Odom cease employment with RingCentral. As of the date and time of this filing, Odom has refused this request to comply with his contractual obligations.

32. Odom's continued employment with RingCentral is not only a violation of his contractual obligations, it presents a significant business risk to Fuze.

## COUNT I

### Breach Of Contract

33. Fuze restates and incorporates by reference all the previous allegations herein as if set forth fully herein.

34. Odom entered an NDA with Fuze, as described above.

35. The NDA is an enforceable contract between Fuze and Odom.

36. Odom has materially breached the NDA as described above and, specifically, by

accepting and commencing employment with RingCentral and by failing provide Fuze with notice of this employment.

37. Fuze may learn of additional breaches of the NDA by Odom during discovery and reserves its rights to recover for any breach of the NDA by the Defendant.

38. Odom's breach of the NDA was and is a substantial factor in directly and proximately causing damages and irreparable harm to Fuze. Fuze has been and continues to be irreparably harmed by Odom's actions.

## COUNT II

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

39. Fuze restates and incorporates by reference all the previous allegations herein as if set forth fully herein.

40. The NDA is a contract existing between Fuze and Odom. The NDA includes an implied covenant of good faith and fair dealing under Massachusetts law.

41. Odom acted in bad faith and with an improper motive as described herein, in breach of the implied covenant of good faith and fair dealing.

42. Odom's actions violate the reasonable and justifiable expectations of Fuze under the terms of the NDA and have the effect of injuring Fuze's rights to receive the fruits of the NDA.

43. Odom's breach was and is a substantial factor in directly and proximately causing damages and irreparable harm to Fuze. Fuze has been and continues to be irreparably harmed by Odom's actions.

### REQUESTS FOR RELIEF

WHEREFORE, Fuze requests that this Court award the following relief:

A. Enter judgment in favor of Fuze on all Counts in the present Complaint;

B. Award damages to Fuze in an amount to be determined at trial;

C. Award Fuze its costs, interest, and reasonable attorneys' fees; and

D. Issue a temporary restraining order, a preliminary injunction and ultimately, a permanent injunction binding on Defendant and all persons and/or entities who act in concert or participation with him who receive notice of this Order, without the need for a bond (per the NDA) as follows:

    i. Prohibiting Defendant from working for RingCentral until further order;

    ii. Requiring Defendant to comply with the terms of his NDA with Fuze, including the non-compete and non-solicitation provisions and the provisions on non-disclosure of Proprietary Information; and

    iii. Within ten (10) days of the Court's order, requiring the Defendant to return any Fuze property to Fuze or certify under the pains and penalties of perjury that he has no Fuze property in his custody, control or possession Defendant;

E. Award Fuze its legal fees and costs for this action; and

F. Award Fuze such other relief as this Court deems just and proper.

Dated:  August 12, 2019

Respectfully submitted,
FUZE, INC.

By its attorneys,

 /s/ Sarah B. Herlihy
Sarah B. Herlihy, BBO # 640531
ARROWOOD LLP
10 Post Office Square
7th Floor South
Boston, MA  02109
sherlihy@arrowoodllp.com